<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

_____
                                :
LAURA BRESKO and JOAN BRESKO,   :
                                :    Civil Action No. 11-6907 (CCC)
            Plaintiffs,         :
                                :
        v.                      :
                                :
THOMAS CRITCHLEY et al.,        :
                                :
            Defendants.         :    **OPINION**
_____ :

**Claire C. Cecchi**, District Judge:

This matter comes before the Court upon Plaintiffs' filing of a civil complaint ("Complaint") and Defendants' filing of a motion for summary judgment. For the reasons detailed below, Defendants' motion will be dismissed as premature, without prejudice to renewal, and Plaintiffs will be ordered to show cause as to why their Complaint shall not be dismissed for abuse of judicial process. The parties will be provided ample opportunity to litigate this threshold issue and, in the event Plaintiffs succeed at establishing that their claims are not facially frivolous, Defendants will be allowed to renew their motion for summary judgment.[1]

_____

[1] The Court also takes notice of Defendant Christian Van Pelt's ("Van Pelt") Motion to Dismiss [Docket Entry No. 25]. In light the of the Court's opinion, this motion to dismiss is denied without prejudice. In the event that Plaintiffs establish

## I.   PROCEDURAL HISTORY AND UNDERLYING FACTS

The somewhat convoluted procedural history of this matter and facts underlying the Complaint relate to other matters instituted in this District.

The factual predicate began to develop in December 2010, when the marital relationship between Peter Bresko ("Bresko") and his then-spouse-of-twelve-years, Renate Bresko ("Renate"), deteriorated.  Correspondingly, Bresko initiated a divorce action against Renate.  That action was properly filed with the New Jersey Superior Court, Law Division, and assigned to Judge Enright.  Prior to the adjudication of his matrimonial action by Judge Enright, Bresko filed with this District a notice of removal of his matrimonial proceeding, attempting to halt Judge Enright's adjudication of his divorce.

Renate made an appearance in that matrimonial matter and, in addition, initiated her own action with the New Jersey Superior Court, Law Division.  Renate's action asserted a domestic violence claim against Bresko and sought a restraining order.  The domestic violence action was assigned to Judge Critchley of the Family Part of the New Jersey Superior Court.  These proceedings resulted in: (a) issuance of a temporary restraining order ("TRO") followed by a final restraining order ("FRO")

––––––––––––––––

that they have standing, Van Pelt may refile his motion to dismiss.

Page -2-

against Bresko; and (b) a final order allocating child custody and parenting time between Renate and Bresko.  Bresko subsequently violated the terms of these two final orders causing Judge Critchley's issuance of a warrant for Bresko's arrest and incarceration; Bresko was since released.

Judge Critchley's order as to Bresko's arrest and incarceration prompted Bresko to commence a habeas proceeding in this District.   Three days after initiating that habeas action, Bresko commenced a civil proceeding, raising constitutional and state law claims against Judges Critchley and Enright.

Meanwhile, in connection with the above detailed divorce and domestic violence proceedings, a bitter custody dispute developed with regard to Renate and Bresko's children, Katrina and Peter Jr.  Adjudicating the aspects of this custody dispute pertaining to the matrimonial matter over which she was presiding, Judge Enright – acting as both the presiding tribunal and parens patriæ – entered an order barring Bresko's mother and sister ("Plaintiffs") from having contact with Katrina and Peter Jr. until Judge Enright could have a hearing as to whether such contact was advisable.   On the same day when Judge Enright entered the aforesaid order, Judge Critchley – adjudicating the aspects of this custody dispute pertaining to the domestic violence matter over which he was presiding – entered an order barring Bresko from making or causing any third party to disclose

the whereabouts of Katrina and Peter Jr.

In an apparent effort to assist Bresko in his divorce and domestic violence proceedings, as well as in his custody dispute, Plaintiffs commenced the case at bar.[2]  Their Complaint alleged violations of the First, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments, violations of the New Jersey Constitution, conspiracy and RICO, false arrest and imprisonment, wire fraud, state tort claims of intentional and negligent emotional distress, slander, libel, malicious prosecution, and even such odd challenge as "wrongful enforcement of the law and theft of services," etc.  See, generally, Docket Entry No. 1.

 896 F. Supp. 166, 170 n. 3 (D.N.J. 1995).

## II.  INSUFFICIENT PLEADING AND JUS TERTII CLAIMS

While the Court takes this opportunity to note both the thoroughness and strong substantive merit of Defendants' motion for summary judgment, the Court's disposition on the issues raised in that motion is largely premature at this juncture since Defendants' submissions (while duly addressing such matters as Younger abstention, jurisdictional bar ensuing from the Rooker-Feldman doctrine, exclusion of federal jurisdiction in domestic

---

[2] This matter was initially commenced in the United States District Court for the Northern District of Florida, where Plaintiffs reside.   The Complaint named, as Defendants, Judges Enright and Critchley, a DYFS employee assigned to Katrina and Peter Jr.'s case, New Jersey Battered Women Services (which assisted Renate), Renate's attorney and even the insurance carrier for that attorney, etc.

relations cases, qualified immunity, procedural deficiencies of
Plaintiffs' state claims, facial inapplicability of RICO
provisions to Plaintiffs' claims, lack of factual predicate
within the meaning of <u>Iqbal</u> for the purposes of conspiracy
claims, etc.) are virtually silent as to such threshold matters
as standing and abuse of judicial process. <u>See</u> Docket Entries
Nos. 15 and 20 (detailing Defendants' position at length but,
unfortunately, gracing the issue of standing with one word only).

Therefore, this Court finds it warranted to take a step back
and look at the larger picture: in order to detect which wrongs
Plaintiffs are claiming and whether the factual predicate related
to Plaintiffs provides basis for a viable claim (or if this
action was instituted without any intent to engage in <u>bona fide</u>
litigation).

**A.    Factual Predicate Asserted by Plaintiffs**

Plaintiffs' Complaint, while exceedingly lengthy, is filled
with self-serving bold conclusions and contains a scarcity of
factual predicate underlying Plaintiffs' numerous claims.  This
Court's review of the Complaint led the Court to conclude that
the paragraphs shedding most light on the factual predicate of
Plaintiffs' claims provide as follows:

> Plaintiffs were never noticed and were denied any
> opportunity to defend in any pre-deprivation hearing or
> post-deprivation hearing involving [Bresko's
> matrimonial suit against Renate and Renate's domestic
> violence suit against Bresko]. They were discriminated
> against by . . . Judges Critchley and Enright [in an

unspecified way].  They were denied any due process or
equal protection under the laws, when [Judges]
Critchley and Enright [were adjudicating Bresko's
matrimonial suit against Renate and Renate's domestic
violence suit against Bresko.  Judges] Critchley and
Enright['s orders] constituted judicial oppression and
abuse of . . . power against Plaintiffs' fundamentally
protected liberty interests, and rights as paternal
grandparent and paternal aunt to have a relationship
with their grandchildren/niece and nephew.  Plaintiffs
were denied their rights as taxpayers . . . .
Plaintiffs were subjected to unconstitutional and
discriminatory actions that were conducted in concert
[by Judges] Critchley and Enright . . . , Renate [and
state agencies and their employee], that have cost
Plaintiffs tens of thousands of dollars and significant
emotional distress in defense of . . . Bresko, in
attempting to have and maintain a relationship with
their grandchildren and niece and nephew. . . .
Plaintiffs attach hereto as EXHIBIT #2[3], the . . .
Order to Show Cause . . . by . . . Judge Enright
[referring to Plaintiffs] impermissible "third-parties"
. . . and alluding that the Plaintiffs are somehow
"domestic abusers" of . . . Renate . . . .  Plaintiffs
attach . . . as EXHIBIT #3[4] an order issued by Judge]
Critchley [referring to] Plaintiffs as impermissible
"third-parties" [and] alluding to them as "domestic
abusers" of . . . Renate . . . . [Plaintiffs interpret
Judges] Critchley and Enright['s orders as statements]
making false, fraudulent, defamatory, slanderous and
libelous claims against Plaintiffs, and . . .
depriv[ing] Plaintiffs of their liberty interests to
have a relationship with their grandchildren and niece
and nephew . . . .

Docket Entry No. 1, at 4-6.

### B.   Pleading Requirement

It is long established that a court should "accept as true

_____

[3] No exhibits were attached to Plaintiffs' Complaint or
submitted later.

[4] No exhibits were attached to Plaintiffs' Complaint or
submitted later.

all of the [factual] allegations in the  complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Nonetheless, the Third Circuit has noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.  See <u>Burlington Coat Fact. Sec. Litig.</u>, 114 F.3d 1410, 1429 (3d Cir. 1997).  Therefore, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See <u>Nice Sys., Ltd. Sec. Litig.</u>, 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

Addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient to pass muster under Rule 8. See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Id.</u> at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965 & n.3.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard . . . demands more than an unadorned [″]the-defendant-unlawfully-harmed-me[″] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[, i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn [on] the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

The Third Circuit observed that Iqbal hammered the "final

nail-in-the-coffin" for the "no set of facts" standard set forth

in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[5] which was

applied to federal complaints before <u>Twombly</u>.  <u>See</u> <u>Fowler v. UPMC</u>

<u>Shadyside</u>, 578 F.3d 203 (3d Cir. 2009).  Since <u>Iqbal</u>, the Third

Circuit has instructed district courts to conduct, with regard to

Rule 8 allegations.

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions.  [<u>See</u> <u>Iqbal</u>, 129 S.  Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief" [in light
> of the definition of "plausibility" provided in <u>Iqbal</u>.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  <u>See</u> <u>Phillips</u>,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show[n]'-'that the
> pleader is entitled to relief.'"  <u>Iqbal</u>, [129 S. Ct. at
> 1949-50 (emphasis supplied)].  This "plausibility"
> determination will be "a context-specific task that requires
> the reviewing court to draw on its judicial experience and
> common sense."  <u>Id.</u>

<u>Fowler</u>, 578 F.3d at 210-11.

In other words, to survive dismissal, a civil complaint must

contain sufficient factual matter which plausibly alleges all

---

[5]  The <u>Conley</u> court held that a district court was permitted
to dismiss a complaint for failure to state a claim only if "it
appear[ed] beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief."
<u>Conley v. Gibson</u>, 355 U.S. at 45-46.  Under this "no set of
facts" standard, a complaint could effectively survive a motion
to dismiss so long as it contained a bare recitation of the
claim's legal elements.

required elements of a cause of action.  See Iqbal, 556 U.S. 662 (relying on Twombly, 550 U.S. at 570).

C.   **Standing to Sue**

Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own.  The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case or controversy" requirement set forth in Article III of the Constitution.  See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).  The Whitmore Court set out two requirements that should be met by one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate"; and (2) "the 'next friend' must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action."  Id. at 163-64.  Since Witmore, the Supreme Court further elaborated the standing requirements of Article III in terms of a three-part test, i.e., whether the plaintiff can demonstrate an injury in fact that is fairly traceable to the challenged actions of the defendant and likely to be redressed by a favorable judicial decision.  See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 102-103 (1998).

However, "the point has always been the same: whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.'"  Id. at 103 n. 5 (quoting Warth v. Seldin, 422 U.S. 490, 508 (1975)); see also Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 301 (2008) (Roberts, J., dissenting) ("The absence of any right to the substantive recovery means that respondents cannot benefit from the judgment they seek and thus lack Article III standing.  "When you['ve] got nothing, you['ve] got nothing to lose'") (quoting Bob Dylan, Like A Rolling Stone, in On Highway 61, Revisited (Columbia Records 1965)).

### D.  Plaintiffs' Claims

Under the foregoing tests, the bulk of Plaintiffs' claims are facially deficient.  Being persons different and distinct from Bresko, Plaintiffs cannot rely on the events that took place in Bresko's life in order to assert that there was an undue arrest, undue imprisonment, malicious prosecution, wire fraud, or denial of procedural safeguards in the matrimonial or domestic violence suits (even if this Court were to hypothesize, generously, that Bresko could somehow assert such claims). The Court has no reason to presume – and Bresko's prior actions in this District, as well as Plaintiffs' Complaint itself prompt the Court to negate the possibility – that Bresko's mental

incompetence prevents him from vindicating his rights.[6] Because no event in Bresko's life can be "stitched" to or "re-characterized" into Plaintiffs' claims, all such claims are necessarily subject to dismissal for lack of standing.

Almost all of Plaintiff's remaining claims fail to meet the pleading requirement articulated by <u>Iqbal</u>.  For instance, the fact that Judges Critchley and Enright entered orders during the same period of time or consulted with state agencies does not plausibly state a RICO or conspiracy claim.  Likewise, Plaintiffs' disappointment about the progress in Bresko's matrimonial action or in Renate's domestic violence case falls short of stating an intentional or negligent infliction of emotional distress claim.  Lastly, Plaintiffs have failed to adequately plead that Defendants have committed any

---

[6] Plaintiffs' attempt to connect their claims to the events in Bresko's life through assertion that Plaintiffs are "taxpayers" whose tax dollars support, <u>inter alia</u>, the judiciary and state agencies fares even worse since: (1) Plaintiffs, Florida residents, do not contribute to the operations of the New Jersey state judiciary or New Jersey state agencies; (2) no taxpayer has a right in an outcome of the adjudication favorable to that taxpayer; and, in any event, (3) it has been long established that one's taxpayer status does not supply one with the standing needed for litigation.  <u>See</u>, <u>e.g.</u>, <u>Arizona Christian Sch. Tuition Org. v. Winn</u>, 131 S. Ct. 1436 (2011); <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451 (2006); <u>Ryan v. Brown</u>, 227 F.3d 1042 (7th Cir. 2000); <u>Amsterdam Tobacco Inc. v. Philip Morris Inc.</u>, 107 F. Supp. 2d 210 (S.D.N.Y. 2000); <u>Schuler v. Bd. of Educ.</u>, 2000 U.S. Dist. LEXIS 1006 E.D.N.Y. Feb. 1, 2000).

constitutional violations.[7]

In sum, reading Plaintiffs' Complaint with the utmost measure of lenience, the Court can distill only two claims asserting some form of a factual predicate.  One of these claims appears to be Plaintiffs' assertion that, being blood-related to Katrina and Peter Jr., Plaintiffs have a liberty interest in being in associating with Katrina and Peter Jr. while Bresko's matrimonial action and Renate's domestic violence dispute are underway.  The other claim appears to ensue from Plaintiff's opinion that Judges Critchley and Enright's findings (that Plaintiffs were third parties lacking standing in Bresko's matrimonial action and Renate's domestic violence dispute) were "false, fraudulent, defamatory, slanderous and libelous."[8]  Both of these claims are facially meritless.

### 1.   *Lack of Substantive Right in Association*

Plaintiffs – being merely a non-custodial, non-cohabitating, non-in-loco-parentis grandmother and a non-custodial,

_____

[7] Indeed, the Complaint makes it clear that Plaintiffs are not similarly situated to Katrina and Peter Jr.'s parents, that no "cruel and unusual punishment" of constitutional magnitude could be fancied on the facts at bar, that no negation or expansion of governmental power is taking place in Bresko's matrimonial action or Renate's domestic violence suit, that no inference of slavery or involuntary servitude of Plaintiffs could be fathomed, etc.

[8] This claim appears to have an "appendix" in the form of Plaintiff's self-serving conclusory deducement that Judges Critchley and Enright's decisions might have "alluded" to Plaintiffs being Renate's abusers.

non-cohabitating, non-<u>in</u>-<u>loco</u>-<u>parentis</u> aunt – have no substantive
right in association with Katrina and Peter Jr., either
altogether or, at the very least, during the pendency of Bresko's
matrimonial action and Renate's domestic violence proceedings.

Perhaps one of the most thoughtful discussions of this issue
was provided by the United States District Court for the Western
District of Pennsylvania, which observed as follows:

> While the Third Circuit Court of Appeals has not
> defined the substantive due process rights of
> grandparents and other extended family members relative
> to custodial matters, several other federal circuit
> appeals courts have addressed this issue. . . . [The]
> courts addressing the purported due process rights of
> grandparents and other extended family members seem to
> place particular emphasis on several factors: to wit,
> whether the plaintiff is a custodial figure or is
> otherwise acting <u>in</u> <u>loco</u> <u>parentis</u> to the children;
> whether and for how long the children were residing
> with the plaintiff . . . and whether there is a
> potential conflict between the rights of the plaintiff
> and the rights or interests of the children's natural
> parents. . . . In <u>Ellis v. Hamilton</u>, 669 F.2d 510
> (7th Cir. 1982), the Seventh Circuit . . . considered
> the due process claims [by two grandmothers who resided
> with and cared for their grandchildren after both
> parents of these grandchildren were deemed unfit
> parents. The grandchildren were taken into State's
> custody after] welfare officers had ordered the
> [grandmothers] to surrender the [grand]children on two
> days' notice and without any explanation, after which
> time the children were placed in unsuitable foster care
> settings [and then adopted by complete strangers. The
> state officers] arranged for [that] adoption . . . and
> obstructed the [grandmothers'] participation in those
> [adoption] proceedings. [The <u>Ellis</u> court observed that]
> "it would be a deprivation of that liberty without due
> process of law for persons acting under color of state
> law permanently to separate the children from their
> parents without notice and hearing" [and, under that
> principle, found a connection between that substantive
> right and the rights of the children's adoptive and

legal grandmother, but not on the part of the merely
biological grandmother.  Nothing its doubt] that this
kind of liberty interest could exist where the
grandchildren remain in their parents' custody, [the
Ellis court found a substantive right in the children's
legal grandmother since she] had been in loco parentis
to her grandchildren at the time the [state] took them
away from her. . . .  Thus, the Ellis court was
prepared to assume the existence of a constitutionally
protected liberty interest on the part of [the legal
grandmother but] it went on to hold that no due process
violation had occurred because [the state] law provided
adequate remedies for the correction of any errors
which had occurred in the course of the legal
proceedings [by, e.g., proper motion or appeal].

The Second Circuit recognized a constitutionally
protected liberty interest on the part of a biological
relative in Rivera v. Marcus, 696 F.2d 1016 (2d Cir.
1982), where the plaintiff was a half-sister to the
children in question and had assumed care for them in
her own home at the request of their mentally ill
mother and pursuant to a foster care agreement.  While
recognizing that foster parents generally do not enjoy
the same liberties as natural parents vis-a-vis the
children in their care, the Second Circuit nevertheless
concluded that the [half-sister] was more akin to a
natural parent, given the fact that she was principally
responsible for the care and upbringing of the children
for a number of years, and had been since their
infancy, prior to the state's involvement. . . . .

In [Mullins v. State of Oregon, 57 F.3d 789 (9th Cir.
1995),] a case distinguishable from Rivera, the Ninth
Circuit Court of Appeals held that a biological
grandmother had no constitutional interest in the
adoption or society of her grandchildren where the
grandmother had only maintained occasional contact with
her grandchildren . . . . [The Ninth Circuit] found
that the . . . grandmother was identical, in every
material respect, to every other "prospective adoptive
parent," save for her biological link. The court
distinguished the ruling in Moore v. City of East
Cleveland, . . . stating that "[a] negative right to be
free of governmental interference in an already
existing familial relationship does not translate into
an affirmative right to create an entirely new family
unit out of whole cloth."  It further stated that it

was unaware of any authority "supporting the
proposition that a grandparent, by virtue of genetic
link alone, enjoys a fundamental liberty interest in
the adoption of her grandchildren" for purposes of
establishing a substantive due process claim.
[Moreover, t]he <u>Mullins</u> court went on hold that the
grandmother lacked any protected liberty interest for
purposes of a procedural due process claim.  . . .

The First Circuit Court of Appeals has similarly
expressed doubt as to whether non-resident grandparents
have a constitutionally protected interest in their
grandchildren under substantive due process principles.
In <u>Brown v. Ives</u>, 129 F.3d 209 (1st Cir. 1997), the . .
. grandfather filed a § 1983 action after a state case
agent identified him as an "untreated sex offender" in
connection with child protection proceedings.  The
plaintiff claimed that this accusation, made without
the benefit of a thorough investigation, deprived him
of his right to maintain contact with his grandchildren
and violated (among other things) his due process
rights of family integrity.  The First Circuit Court of
Appeals affirmed the district court's dismissal, . . .
concluding that . . . the [grandfather] had proffered
"no precedent to show that the circumstances of his
case come even close to a due process violation" based
on the facts involved. [Moreover, while the <u>Brown</u> court
noted that], in <u>Watterson v. Page</u>, 987 F.2d 1 ( 1st
Cir. 1993), it had spoken of the possibility that
grandparents may, in certain cases, have some
constitutionally protected rights in associating with
their grandchildren [the First Circuit in <u>Brown</u>
clarified] that its remarks in <u>Watterson</u> had been
limited to grandparents who were residing with the
grandchildren . . . .

Two Circuit Courts of Appeals, however, have ruled that
even non-resident grandparents possess a
constitutionally protected liberty interest in
participating in the upbringing of their grandchildren.
In <u>Johnson v. City of Cincinnati</u>, 310 F.3d 484 (6th
Cir. 2002), the Sixth Circuit considered the
constitutionality of an ordinance which banned
individuals arrested for or convicted of drug crimes
from entering certain areas designated as "drug
exclusion zones."  Because of her prior arrest on
marijuana trafficking charges, the plaintiff . . . was
prohibited from entering a particular drug exclusion

zone where one of her daughters and five of her minor
grandchildren resided and attended school.  . . .  The
question confronted by the Sixth Circuit Court of
Appeals in Johnson was "whether a grandmother has a
fundamental freedom of association right to participate
in the upbringing of her grandchildren."  The court
opined that prior circuit precedent, as set forth in
Thompson v. Ashe, 250 F.3d 399 (6th Cir. 2001),
counseled against recognizing a fundamental right on
the part of grandparents to merely visit their
grandchildren.  In Thompson, the Sixth Circuit had
rejected the plaintiff's constitutional challenge to a
"no trespass" list that had barred the plaintiff from
visiting family members in a public housing
development, stating that the Supreme Court's
recognition of an associational right of cohabitation
with relatives "has not [been] extended ... to mere
visitation with family members."  Notwithstanding this,
however, a majority of the panel in Johnson ruled that
the plaintiff grandmother did have a fundamental
associational interest in participating in the
education and rearing of her grandchildren, reasoning
that "Thompson itself recognized the distinction
between participating in child rearing and merely
visiting one's family." . . .

The Tenth Circuit Court of Appeals [also recognized]
constitutional right to familial association as between
grandparents and their grandchildren.  In Suasnavas v.
Stover, 196 F. App'x 647 (10th Cir. 2006), the . . .
lawsuit arose out of a series of state court child
welfare proceedings [where grandparents were accused]
of having sexually molested [the grandchild]. . . .
[T]he Tenth Circuit . . . held . . . that the
[grandparents] had a constitutionally protected liberty
interest in associating with their grandchildren [by
relying] on the Tenth Circuit's prior decision in
Trujillo v. Board of County Commissioners, 768 F.2d
1186 (10th Cir. 1985), a case in which the plaintiff
mother and her adult daughter claimed that they had
been deprived of their constitutional right of familial
association with their adult son/brother by virtue of
his wrongful death while incarcerated at the Santa Fe
County Jail.
. . .
As the foregoing survey of case law demonstrates, the
various circuit courts of appeals have not been uniform
in their method of analyzing substantive due process

Page -17-

claims involving asserted liberty interests on the part
of grandparents or other extended family members
relative to their minor kin.  Nevertheless, certain
common themes seem to figure prominently in the cases,
most notably the courts' emphasis on whether the
plaintiff was a custodial figure or otherwise acting <u>in</u>
<u>loco</u> <u>parentis</u> to the children at the time of the
state's involvement in their lives; whether and for how
long the children had been residing with the
[grandparents and extended family members] prior to
state intervention; . . .  whether there is a potential
conflict between the rights of the [grandparents and
extended family members] and the rights or interests of
the children's natural parents; and whether the
[grandparents and extended family members] ha[ve] any
rights or expectations relative to the children under
relevant state law.

Based on the foregoing authorities, I conclude that [a
non-custodial, non-cohabitating, non-<u>in</u>-<u>loco</u>-<u>parentis</u>
grandmother] lacks any constitutionally protected
liberty interest in associating with her
granddaughters.

<u>Rees v. Office of Children & Youth</u>, 744 F. Supp. 2d 434 (W.D. Pa.

2010) (citations omitted), <u>aff'd</u> 2012 U.S. App. LEXIS 6447 (3d

Cir. Mar. 30, 2012).

Here, Plaintiffs' claims asserting undue denial of

association with Katrina and Peter Jr. are limited to the impact

of: (1) Judge Enright's order that Plaintiff could not have

contact with the children until Judge Enright held a hearing as

to whether such contact was advisable; and (2) Judge Critchley's

order barring Bresko from making or causing any third party to

disclose the whereabouts of Katrina and Peter Jr. while the

domestic violence proceedings were underway.  None of these

orders operated as a permanent bar on Plaintiffs' ability to

eventually get in touch with Katrina and Peter Jr. Yet,
Plaintiffs, a non-custodial, non-cohabitating, non-_in_-_loco_-
_parentis_ grandmother and a non-custodial, non-cohabitating,
non-_in_-_loco_-_parentis_ aunt,[9] assert that this temporary lull in
association violated their rights. While – in light of the
thoughtful and highly persuasive discussion provided in _Rees_ – it
appears that Plaintiffs' rights would not be violated even by a
permanent bar on their association with Katrina and Peter Jr.,
this Court need not reach this issue in _dicta_, and it should
suffice to merely find that Plaintiffs do not have any right to
associate with Katrina and Peter Jr. while Bresko's matrimonial
action and Renate's domestic violence proceedings are underway.
Correspondingly, all Plaintiffs' challenges based on the alleged
undue denial of association are facially meritless and shall be
dismissed with prejudice.

### 2. _Libel and Related Claims_

As noted _supra_, Plaintiffs' other claim having some factual
predicate ensues from the findings made by Judges Enright and
Critchley: these findings were legal conclusions that Plaintiffs
were third parties for the purposes of Bresko's matrimonial

---

[9] The Complaint itself verifies that Renate, Bresko,
Katrina and Peter Jr. were residing in New Jersey (and, it
appears, Renate and the children took protection with a battered
women's shelter in New Jersey), while Plaintiffs were Florida
residents who, at no point in time, had any custodial rights or
acted _in loco parentis_. _See_, _generally_, Docket Entry No. 1.

action against Renate and for the purposes of Renate's domestic violence action against Bresko.   Plaintiffs define these legal findings as "false, fraudulent, defamatory, slanderous and libelous"[10] statements.

However, Plaintiffs' disagreement with Judges Enright and Critchley's legal conclusions cannot support a claim of libel, defamation, falsity, etc.   "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."   Restatement 2d of Torts, § 559.   To state a defamation claim under New Jersey law, a defendant must make a false and defamatory statement of *fact* about plaintiff, that the defendant knew or should have known was false, and that was communicated to third parties, causing damages. See Artista Records, Inc. v. Flea World, Inc., 356 F. Supp. 2d 411, 424 (D.N.J. 2005) (citing Beck v. Tribert, 312 N.J. Super. 335, 711 A.2d 951, 953-59 (N.J. Super. Ct. App. Div. 1998)).   A judicial finding that one is a "third party" in an action cannot qualify as a factual statement or as a statement affecting one's reputation: it merely defines one's legal status vis-a-vis a certain legal proceeding.   Therefore, all Plaintiffs'

---

[10]   The rationale of Plaintiffs' reference to "slander," which implies words false spoken (rather than written), escapes this Court, since Plaintiffs themselves maintain that Judges Enright and Critchley's findings were made in written orders.

challenges ensuing from Judges Enright and Critchley's findings that Plaintiffs lacked standing for the purposes of Bresko's matrimonial action or Renate's domestic violence proceedings are facially meritless.  Correspondingly, these claims are subject to dismissal with prejudice.

The foregoing analysis leaves the Court solely with Plaintiffs' self-serving speculative assertion that some language in Judges Critchley and Enright's orders might have "alluded" to Plaintiffs' abuses of Renate.  Generally, speculative claims are typically dismissed without prejudice, and the plaintiff is allowed to cure the deficiencies of his/her challenges by articulating the underlying facts.  However, taking notice of Plaintiffs' concession that Judges Critchley and Enright's orders were unquestionably entered in Judges Critchley and Enright's judicial capacity, the Court finds it futile to allow Plaintiff an opportunity to amend this line of challenges.

The doctrine of judicial immunity provides that judges are immune from suit for monetary damages arising from their judicial acts.  See Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000); see also Mireles v. Waco, 502 U.S. 9 (1991) (per curiam).  To determine whether the judicial immunity doctrine applies, the Court must establish: (a) whether the judge's actions were "judicial" in nature; and (b) whether the judge acted in the "clear absence of all jurisdiction over the subject

matter."[11]  <u>Gallas</u>, 211 F.3d at 768-69 (quoting <u>Stump v.</u>
<u>Sparkman</u>, 435 U.S. 349, 356 n.6 (1978)).  An act is judicial in
nature if "it is a function normally performed by a judge" and if
the parties "dealt with the judge in his judicial capacity."
<u>Stump</u>, 435 U.S. at 362.  "[A litigant's] allegations of bad faith
[and] malice" cannot overcome [judicial] immunity."  <u>Abulkhair v.</u>
<u>Rosenberg</u>, 2012 U.S. App. LEXIS 494 (3d Cir. Jan. 10, 2012)
(quoting <u>Mireles</u>, 502 U.S. at 11).  Simply put, "an act does not
become less judicial by virtue of an allegation of malice or
corruption of motive," or that such action is "unfair" or
"controversial."  <u>Gallas</u>, 211 F.3d at 769; <u>accord</u> Stump, 435 U.S.
at 363 ("[d]isagreement with the action taken by the judge . . .
does not justify depriving the judge of his immunity").

    There is no doubt that Judges Critchley and Enright's
actions (<u>i.e.</u>, issuing the orders challenged by Plaintiffs) were
acts performed in their judicial capacity and within the scope of
their due jurisdiction over Bresko's matrimonial action and
Renate's domestic violence proceedings.  Therefore, Judges
Critchley and Enright would necessarily be immune from suit for
damages for any findings of law and/or fact made by these Judges.

_____

    [11] Where a judge "was properly called to preside over [a
litigant's court proceeding], there could be no basis for a
presumption that [the judge] acted 'in the clear absence of all
jurisdiction.'"  <u>Peeples v. Citta</u>, 2012 U.S. Dist. LEXIS 52895,
at *15 (D.N.J. Apr. 16, 2012) (relying on <u>Gallas</u>, 211 F.3d at
769).

Correspondingly, granting Plaintiff leave to amend their claims based on Plaintiffs' deducement that Judges Critchley and Enright "alluded" to Plaintiffs being Renate's abusers would necessarily be futile, and this line of claims will too be dismissed with prejudice.

## III.  ORDER TO SHOW CAUSE IN LIEU OF LEAVE TO AMEND

Ordinarily, a plaintiff may be granted "leave [to amend,] . . . when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).  Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  Foman, 371 U.S. at 182-83.  However, "[a]llowing leave to amend where 'there is a stark absence of any suggestion by the plaintiffs that they [might] have developed any facts since the action was commenced, which would, if true, cure the defects in the pleadings . . . , would frustrate Congress's objective in enacting this statute of 'provid[ing] a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis.'"  Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 164 (3d Cir. 2004) (citation omitted).

Here, Plaintiffs panoply of challenges, consisting of claims wholly meritless or raised without standing, or asserted in a

purely self-serving conclusory fashion without any factual
predicate, present this Court with a hard choice.  Indeed, both
the totality and the finer aspects of Plaintiffs' submissions
strongly suggests that Plaintiffs instituted this action not with
bona fide intent to litigate meritorious claims but in the hope
to assist Bresko by pestering and obstructing the efforts of the
state judiciary and state agencies which are providing assistance
to the state courts, Renate, Katrina and Peter Jr.

    However, out of an abundance of caution, the Court finds
dismissal of Plaintiffs' Complaint with prejudice unwarranted at
this juncture and, granting Plaintiffs the benefit of the doubt,
will allow them an opportunity to show cause as to why their
challenges shall not be dismissed as facially frivolous and
presented to this Court in abuse of judicial process.[12]  Thus,

_____

[12]  The Court takes this opportunity to warn Plaintiffs that
their persistence at submitting frivolous claims might result in
conclusive closure of this matter and might even cause imposition
of sanctions, if warranted.

      "The courts in this nation stand ready to address
      challenges brought by litigants in good faith.  Which,
      in turn, means that the judiciary — including the
      Judges in this District — expect litigants to treat
      their litigation with utmost seriousness, without
      abusing legal process and without unduly testing of the
      resolve or common sense of the judiciary."  In re
      Telfair, 745 F. Supp. 2d 536, 2010 U.S. Dist. LEXIS
      110681, at *130 (D.N.J. Oct. 15, 2010).

          Th[is] Court does not know why M.K., K.S., K.C.,
          Bey, El, etc. have chosen to file their
          labyrinthine, multi-defendant . . . actions in
          federal courts over the years, or why they have

Plaintiffs will be directed to submit a written statement

listing, clearly and concisely, each claim Plaintiffs wish to

allege[13] and follow each such claim with a statement of facts

(not exceeding one single-sided, double-spaced page) detailing

what particular action each particular defendant undertook and

how exactly Plaintiffs themselves were injured by these

particular actions.  The Court stresses that bold, self-serving

_____

> elected to file the Instant Matter, . . . in the
> last few weeks.   . . . [T]hese litigants have . .
> . exacted and will continue to exact a heavy price
> on the finite resources of this District Court and
> other federal courts at district level and, hence,
> on litigants in other matters as to whom justice
> will be delayed while those scarce [judicial]
> resources are expended to process M.K., K.S.,
> K.C., Bey and El's bounty.  See Miller v. Donald,
> 541 F.3d 1091, 1096 (11th Cir. 2008) ("Frivolous
> and vexatious law suits threaten the availability
> of a well-functioning judiciary to all
> litigants"); Procup v. Strickland, 792 F.2d 1069,
> 1072 (11th Cir. 1986) (en banc) ("Every lawsuit
> filed, no matter how frivolous or repetitious,
> requires the investment of court time, whether the
> complaint is reviewed initially by a law clerk, a
> staff attorney, a magistrate, or the judge"). The
> undersigned will not sit idly by as this District
> Court is inundated with harassing and vexatious
> litigation arising from whatever M.K., K.S., K.C.,
> Bey and El's perceived multimillion-dollar
> constitutional affront du jour might be.

> Bethel v. Bosch, 2010 U.S. Dist. LEXIS 128065, at *13
> (S.D. Ala. Dec. 2, 2010).

Murakush Caliphate of Amexem Inc. v. New Jersey, 790 F. Supp. 2d
241, 267 (D.N.J. 2011) (original brackets and ellipses removed).

   [13] Plaintiffs, however, cannot re-allege the claims dismissed
with prejudice in this Opinion and accompanying Order.

conclusory statements cannot be used by Plaintiffs in substitute of factual allegations. <u>Cf.</u> <u>Advanta Corp. Sec. Litig.</u>, 180 F.3d 525, 534 (3d Cir. 1999) (quoting <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990), for the observation that a pleading must indicate "the who, what, when, where, and how: the first paragraph of any newspaper story"); <u>accord</u> <u>Lindell v. Houser</u>, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006) ("A District court should not have to read and decipher tomes disguised as pleadings").

**V.   CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint, Docket Entry No. 1, will be dismissed.  Plaintiffs' challenges based on the events that took place in Bresko's life, as well as Plaintiffs' claims based on their taxpayer status will be dismissed with prejudice for lack of standing.  Plaintiffs' challenges asserting denial of right to associate with Bresko and Renate's children will be dismissed with prejudice for failure to state a claim upon which relief can be granted.  Plaintiffs' challenges asserting violation of their right as a result of findings of law and/or fact made in Judges Critchley and Enright's orders will be dismissed with prejudice for failure to state a claim upon which relief can be granted or, in alternative, under the doctrine of judicial immunity.  The remainder of Plaintiffs' claims will be dismissed without prejudice, and Plaintiffs will be allowed an opportunity to

clarify the factual predicate of *their own* claims in a written
response showing why this matter shall not be dismissed as
frivolously instituted.

Defendants' motion for summary judgment, Docket Entry No.
15, will be dismissed as premature, without prejudice to renewal
in the event Plaintiffs show cause as to why this matter shall
not be dismissed as frivolously instituted.

Plaintiffs' request for transfer of this matter to an
Article III court will be denied as facially superfluous.  An
appropriate Order accompanies this Memorandum Opinion.

_____
**Claire C. Cecchi, U.S.D.J.**

Dated: July 26, 2012